Attachment 2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Ronald K. Henry and )
Constance B. Henry )
)
     Plaintiffs, )
)
     v. )    CIVIL ACTION: 05-02406 (HHK-DAR)
)    NEXT SCHEDULED COURT
Ward Onsa, Ward Onsa & Company, )    EVENT: OCTOBER 25, 2007
and Denise Onsa )    STATUS HEARING
)
     Defendants. )
)

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
## REGARDING SANCTIONS

At the October 12, 2007 hearing on Plaintiffs' Motion for Sanctions and Supplemental Motion for Sanctions, the Court granted both motions and took under advisement the appropriate sanctions to be imposed upon Defendants in addition to costs. Plaintiffs Ronald K. Henry and Constance B. Henry, by their undersigned counsel, respectfully submit their position regarding which sanctions would be appropriate:

1.    This litigation began because Plaintiffs could no longer ignore the increasingly obvious and inconsistent lies by the Defendants with respect to their disposition of Plaintiffs' invested funds. They claimed that the money was here, the money was there, the money was overseas, the money was delayed by regulatory compliance issues, the investments were not liquid, on and on. Finally, the Plaintiffs commenced this litigation.

2.    After the commencement of the litigation, only one thing changed. Instead of

simply lying to the Plaintiffs, the Defendants are now lying directly to the Court.

3.  For example, Defendants' Answer denied knowledge of the MAN/REFCO account in which Plaintiffs had placed $160,000.00 under the control of Defendants.  See Exhibit 1[1].  This lie was exposed when Plaintiffs produced brokerage a Man Financial document establishing Ward Onsa as the authorized representative controlling trades in this account.  Exhibit 2.

4.  In all of their pleadings and oral arguments, Defendants have claimed that the events of 9/11/01 somehow caused Plaintiffs' money to become "lost."  This also is a transparent lie.  Defendants have failed to produce a single document indicating how they might have "lost" Plaintiffs' money.  Instead, Plaintiffs' third-party subpoenas have revealed that Defendants simply stole the money.  Exhibit 3 is a sampling of checks dated **after** 9/11/01 showing that Defendants casually and repeatedly took large sums of money from the investment account and paid themselves.

5.  Defendants also have no qualms about making up brand new lies and shifting to new positions even while standing in front of this Court.  When it became apparent in the midst of the hearing held on October 12 that this Court was going to impose sanctions, Defendants did not hesitate before launching a whole new set of lies about how they allegedly had made complete financial disclosure in their

---

[1]Man Financial, Inc., the company referred to on Ex. 2, now owns REFCO, the company referred to in the Onsas' Answer (Ex. 1).  Plaintiffs' funds were initially deposited into Man Financial, and they were later transferred to REFCO.

interrogatory answers. To the contrary, Defendants' interrogatory answers flatly refused to provide any financial information. See Exhibit 4. For example, Interrogatory 15 requested information about banking records and stock and security transaction records, to which Defendants responded: "Defendants object to this interrogatory because it is again a broad, sweeping request that is irrelevant to the issues in this case and places undue burden on the defendants."[2] Similarly, with regard to Interrogatories 19 and 20, requesting information about Defendants' claims as to the return of Plaintiffs' money, Defendants responded: "Please refer to the original Answer and Amended Answer to Complaint." With regard to Interrogatory 24, asking directly for information about "investments or other uses of the funds provided to any of the Defendants by Ronald K. Henry or Constance B. Henry", the Defendants replied: "There are none." See Exhibit 4.

6.    When confronted with canceled checks obtained under third party subpoenas showing that Defendants have stolen money from the investment account, Defendants stood in front of this Court and brazenly invented the new lie (directly contradicted by representations made in Ward Onsa's deposition) that they were simply paying themselves previously undisclosed, unlimited and unauthorized amounts for their living expenses.

7.    The fact of the matter is that this case is riddled with multiple intentional

---

[2] Note that the Court's July 21, 2007 Order explicitly held that all objections to Plaintiffs' discovery requests have been waived.

falsehoods by these Defendants, and that they have entered the zone of potential criminal contempt. Those kinds of sanctions, however, are for another day since the Court's ruling on October 12 addressed only Plaintiffs' motion for civil contempt sanctions.

8.    With respect to civil contempt, Plaintiffs respectfully request entry of a default for the reasons set forth in Plaintiffs' prior pleadings, at the October 12th hearing, and herein.

9.    In the event that the Court chooses to show further leniency in the face of Defendants' continuing lies and violations of their obligations to the Court, Plaintiffs respectfully urge the Court to recall that Defendants' flagrant resistance against all legitimate discovery efforts has stymied any progress in this litigation for nearly two years. Indeed, the litigation is not just "back to Square One". The reality is that we have not yet even gotten to Square One because all of the efforts of the Plaintiffs and the Court have been diverted by the continuing need to deal with lies that never should have entered Defendants' pleadings in the first place.

10.    Accordingly, if the Court chooses not to enter a default, Plaintiffs respectfully request the Court's consideration of an Order containing the following provisions:

a.    Defendants are precluded from contradicting or denying any of the representations made in their prior pleadings or appearances before the Court, and any inconsistencies in the representations or appearances by

Defendants shall be resolved in the manner most favorable to Plaintiffs; and

b.    All amounts taken out of the Ward Onsa & Company account by Defendants and paid to themselves  must be immediately returned to Plaintiffs up to the amount of  Plaintiffs' unreturned capital; and

c.    Defendants are required to pay all of Plaintiffs' costs, including attorney's fees, since the beginning of this litigation; and

d.    Defendants are found to be in civil contempt of this Court's Orders and are ordered to pay the amount of $50,000.00 to the Plaintiffs.

e.    In the even that any portion of this case is not resolved by default judgment, additional discovery will be needed and Plaintiffs respectfully propose a new discovery deadline of January 31, 2008.

Respectfully submitted,

RONALD K. HENRY
CONSTANCE B. HENRY
Plaintiffs
By Counsel

/s/ Christopher G. Hoge
Christopher G. Hoge #203257
Co-Counsel for Plaintiffs

/s/ Ronald K. Henry
Ronald K. Henry #242941
Co-Counsel for Plaintiffs

CROWLEY, HOGE & FEIN, P.C.
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C. 20036
(202) 483-2900

KAYE SCHOLER LLP
901 15th Street, N.W.
Washington, D.C. 20005
(202) 682-3590

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing pleading was sent by e-mail to "wonsa1@comcast.net" and by Federal Express to Ward Onsa, Denise Onsa and Ward Onsa & Company, Defendants *pro se*, 910 Sycamore Court, Marco Island, FL 34145 by me this 19th day of October, 2007.

/s/ Christopher G. Hoge
Christopher G. Hoge

cgh/z/wpdirs/civil
rhenrysanctionsmemo.wpd

**EXHIBIT**

**1**

Denise Onsa
910 Sycamore Court
Marco Island, FL 34145

March 8, 2006

Paul Heylman, Esq.
Schmeltzer Aptaker & Shepard, PC
The Watergate
2600 Virginia Ave., NW, Suite 1000
Washington, DC 20037-1922

Dear Mr. Heylman:

Enclosed is the answer to the complaint, Ronald K. Henry and Constance B. Henry, Plaintiffs v. Ward Onsa, Ward Onsa & Company, Denise Onsa, Defendants, Case Number 1:05CV02406 filed with the United States District Court, District of Columbia.

Denise Onsa

UNITED STATES DISTRICT COURT
FOR THE DISCTRICT OF COLUMBIA

Ronald K. Henry )
Kaye Scholer LLP )
901 15th Street, NW )
Suite 1100 )
Washington, DC 20005 )
)
and )
)
Constance B. Henry )
c/o Ronald K. Henry )
Kaye Scholer LLP )
901 15th Street, NW )
Suite 1100 )
Washington, DC 20005 )          CASE NUMBER 1-05CV02406
)
            Plaintiffs,          )          ,JUDGE:  Henry H. Kennedy
)
      v.                         )          DECK TYPE:  Contract
)
Ward Onsa                        )          DATE STAMP:  12/15/2005
910 Sycamore Court               )
Marco Island, Florida 34145      )
)
Ward Onsa & Company              )
910 Sycamore Court               )
Marco Island, Florida 34145      )
)
and                              )
)
Denise Onsa                      )
910 Sycamore Court               )
Marco Island, Florida 34145      )
)
            Defendants.          )
)

## ANSWER TO COMPLAINT

This court lacks jurisdiction, both over the subject matter and personal jurisdiction over the defendant since the defendant never offered securities or the like to plaintiff within the meaning of the 1934 Securities Exchange Act nor did the defendant act as an advisor to plaintiff pursuant to the 1940 Investors Act. If the court for any reason assumes jurisdiction, the defendant respectfully requests an extension to answer this complaint to the best of his ability.

The defendant contends that the plaintiff opened up two accounts with the defendant, one approximately in November 1993 in the amount of $1,000,000 and the second one in or about September 1996 in the amount of $300,000. $990,000 was returned by defendant to plaintiff at plaintiff's request.

These two requests were occasioned by the financial calamities visited on Wall Street and the financial community on September 11, 2001. In the aftermath of 9/11, the plaintiff was notified that he could no longer expect or receive a 25% return and he immediately requested his money back. Defendant explained to plaintiff that he would return his principal of $1.3 million but none of the profit if the plaintiff wished to discontinue his investment. Plaintiff was so informed and received $990,000 of his principal back for the two accounts.

Defendant denies any knowledge of a third account as alleged in the complaint in the time frame of October 2001 for $160,000 with Refco. Defendant neither had discretionary authority over nor opened any such account.

Defendant denies all allegations in this complaint 1-87 which are inconsistent with the above statement of facts.

Defendant Ward Onsa had three addresses in the time period relevant to this complaint, namely, 6 Remington Place, Ivyland, PA 18974; P.O. Box 2461, Warminster, PA 18974; 910 Sycamore Court, Marco Island, FL 34145. Defendant Denise Onsa is a resident of Florida, residing at 910 Sycamore Court, Marco Island, FL 34145.

Dated: _3-8_____, 2006          By: _Ward Onsa_____
                                          Ward Onsa

Dated: _3-8_____, 2006          By: _Denise Onsa_____
                                          Denise Onsa

-2-

EXHIBIT

2

# DISCRETIONARY TRADING AUTHORIZATION/ POWER OF ATTORNEY

The undersigned hereby authorizes _WARD ONSA_ as the undersigned's agent and attorney-in-fact (the "Agent"), with full power and authority to enter into contracts for the purchase, receipt, sale (including short sale) and delivery of, whether directly or indirectly through investments in managed investment products or otherwise, commodity futures contracts, commodities, options on commodity futures contracts, physical commodities, including foreign futures and options, forward contracts, securities, equity, debt and related investments (collectively "Contracts") on margin or otherwise, in one or more accounts ("Account") with Man Financial Inc and its affiliates (the "Company").

In all such transactions, as well as management decisions relating to the Account, the Company is hereby authorized to follow the instructions of the Agent; the Agent is authorized to act on behalf of the undersigned in the same manner and with the same force and effect as the undersigned might or could with respect to such transactions, the making and taking of deliveries and with respect to all other things necessary or incidental to the furtherance and/or conduct of the Account.

The Company shall have no liability for following the instructions of the Agent, and the undersigned shall never attempt to hold the Company liable for the Agent's actions or inactions. The undersigned understands that the Company does not, by implication or otherwise, endorse the operating methods of such Agent. The undersigned hereby releases the Company from any and all liability to the undersigned or to anyone claiming through the undersigned with respect to damage, losses or lost profits sustained or alleged to have been sustained as a result of the Company following the Agent's instructions or for any matter arising out of the relationship between the Agent and the undersigned and shall indemnify the Company from any and all losses, damages, liabilities and expenses, of any kind or nature whatsoever, arising therefrom. The undersigned agrees to hold the Company harmless and to indemnify it as to any expense, damage or liability sustained by it with respect to any and all acts and practices of the Agent and attorney-in-fact regarding this account, including all losses arising therefrom and debit balance(s) due thereof.

This authorization is a continuing one and shall remain in full force and effect until revoked by the undersigned, or an authorized person on his behalf, by written notice given to the Company, Attention: Director of Compliance. Such revocation shall become effective only upon the actual receipt thereof by the Company but shall not affect any liability in any way resulting from transactions initiated prior to its receipt. This authorization shall inure to the benefit of the Company, its successors and assigns. The provisions hereof shall be in addition to and in no way shall it limit or restrict

any right which the Company may have under any agreement with the undersigned.

In addition, the Company is further authorized and directed to deduct from the undersigned's account and pay the Agent the amount of all management fees, incentive fees, advisory fees and/or brokerage commissions to be paid to the Agent upon the Company's receipt of invoices from the Agent. The undersigned understands that the Agent is solely responsible for the calculation of such fees and commissions and that the Company has no responsibility or obligation to determine or verify the amount or accuracy of such fees and commissions. In addition, the undersigned acknowledges that it is responsible for the administrative give-up fees incurred in connection with the execution of orders by various independent floor brokers or executing brokers engaged by the Agent and the undersigned authorizes the Company to deduct such fees from the undersigned's account and pay such fees to the appropriate floor brokers or executing brokers upon receipt of their invoices. The undersigned hereby agrees to indemnify and hold harmless the Company and its affiliates and employees from any loss, damage or dispute arising out of or relating to the calculation and payment of such fees and commissions.

All statements, notices, correspondence and the like generated in this account shall be sent or given to the Agent at the address shown for this account and to the undersigned at the address indicated in the Customer's Account documents, or to such other person or address as the undersigned may hereafter designate in writing.

The undersigned represents that the undersigned has been provided with a disclosure document concerning the Agent's advice (if the delivery of such document is required by law), including any options trading advice or strategies, which the undersigned has read and understood, or the Agent has furnished to the undersigned a written statement, receipt of which the undersigned acknowledges, and which the undersigned has read and understands and a copy of which has been furnished to the Company, explaining the Agent's exemption from registration and disclosure document requirements of the United States Commodity Futures Trading Commission and National Futures Association.

The undersigned understands that there are many strategies that can be used in trading options, some of which have unlimited risk of loss and could result in the undersigned sustaining a total loss of all funds in the account and that the undersigned is liable for any deficit in the account resulting therefrom. Customer acknowledges that Customer has discussed with the Company and the Agent the nature and risks of the strategy to be used in connection with options to be traded for the undersigned's account.

Each of the undersigned hereby agrees to the terms and conditions as set forth in this Discretionary Trading Authorization.

Signature: _____     Date: _10/5/01_

Signature: _____     Date: _____

Signature: _____     Date: _____

Signature: _____     Date: _____

REV. 1/01                                    19

# LETTER OF AUTOMATIC TERMINATION

In the event my account(s) with Man Financial Inc are closed for any reason, Man Financial Inc is authorized to consider this my letter of revocation of the limited power of attorney required by the rules of the various contract markets.

Each of the undersigned hereby agrees to the terms and conditions as set forth in this Letter of Automatic Termination.

Signature: _____ Date: 10/5/01

Signature: _____ Date: _____

Signature: _____ Date: _____

Signature: _____ Date: _____

# ADVISOR'S AGREEMENT
## THIRD PARTY LETTER NFA RULE 2-8(E)

The undersigned ("Advisor"), named in the foregoing Discretionary Trading Authorization/Power of Attorney, has read the Customer Agreement between Man Financial Inc and _RONALD K. HENRY_ as Customer and agrees to abide by all the terms and conditions set forth therein and further agrees to comply with all applicable laws, rules and regulations.

Please check the applicable statement: Advisor ☐ has ☐ has not furnished Customer with a disclosure document in accordance with applicable rules and regulations of the Commodity Futures Trading Commission and the National Futures Association. If Advisor has provided Customer with a disclosure document, a copy of it must be furnished to Man Financial Inc. If a disclosure document has not been furnished to Customer, please indicate below the reasons why.

X  a)  I have provided advice to 15 or fewer persons during the past 12 months and do not hold myself out generally to the public as a CTA.

____  b)  I am a (1) dealer, processor, broker, or seller in cash market transactions or (2) nonprofit, voluntary membership, trade association, or farm organization, who provides advice on the sale or purchase of commodities, and any trading advice is solely incidental to the conduct of my business.

____  c)  I am registered as an associated person and my advice is issued solely in connection with my employment as an associated person.

____  d)  I am a relative of the account holder. My relationship to the account holder is _____.

____  e)  I (We) am (are) a foreign-based entity, located outside the United States, and I (we) only solicit non-U.S. persons.

____  f)  I am operating under a 4.7 exemption.

If Advisor is a corporation, partnership or other type of association, attached is a list of all individuals of such corporation, partnership or association who may exercise discretion over the Account: _____.

Advisor's Signature _Ward Onsa_ Date _10-15-01_ Social Security # _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_

Street Address _6 REMINGTON PLACE_

City _IVYLAND_ State _PA_ Zip _18974_ Phone Number _215-322-9166_

Current Employer _Investor (Stocks_ Title _____
_φ Real Estate)_



**EXHIBIT**

**3**

**CHECK FILM PROBLEMS**

**NO COPIES AVAILABLE**    Page _1_

Account Title _Denise L Orsa_

Account Number _000-073-0432_

| | DATE PAID | CHECK NUMBER | AMOUNT | |
|---|---|---|---|---|
| 1 | 9-24-01 | | 10,000.00 | Deposit |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |





































**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Ronald K. Henry            )
Kaye Scholer LLP           )
901 15th Street, NW        )
Suite 1100                 )
Washington, DC 20005       )
                           )
and                        )
                           )
Constance B. Henry         )     CIVIL ACTION: 05-02406 (HHK)
c/o Ronald K. Henry        )
Kaye Scholer LLP           )
901 15th Street, NW        )
Washington, DC 2005        )
                           )
                           )
                           )
                           )
            Plaintiffs,    )
        v.                 )
                           )
Ward Onsa                  )
910 Sycamore Court         )
Marco Island, Florida 34145)
                           )
Ward Onsa & Company        )
910 Sycamore Court         )
Marco Island, Florida 34145)
                           )
and                        )
                           )
Denise Onsa                )
910 Sycamore Court         )
Marco Island, Fl 34145     )
                           )
                           )
            Defendants.    )

**EXHIBIT**

**4**

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendants hereby provide

answers to the following interrogatories for the period 1992 through the present, as follows:

## INTERROGATORY 1

Identify all persons who participated in or provided information for the preparation of your answers to these interrogatories.

## ANSWER

Denise Onsa, Ward Onsa and Anthony Karambelas participated in or provided information for the preparation of the Defendants answers to the interrogatories.

## INTERROGATORY 2

Identify and describe all contacts with the District of Columbia since 1992 including, but not limited to, visits to or presence in the District of Columbia, telephone conversations with persons in the district of Columbia, correspondence by United States mail or otherwise with persons in the District of Columbia, conduct of business with or through institutions located in the District of Columbia, conduct of business in any form in the District of Columbia and any other contacts with the District of Columbia.

## ANSWER

A personal family trip was made once to the District of Columbia. Ward Onsa met with Ronald Henry during this visit. One other visit was made by Ward Onsa to Ronald Henry. There was correspondence made by U.S. Mail, UPS and/or Fed Ex between Plaintiffs and Defendants. There were several telephone conversations between Ward Onsa and Ronald Henry.

## INTERROGATORY 3

Identify and describe all contacts between any of the Defendants and any of the Plaintiffs including, but not limited to, meetings in any location, telephone conversations, correspondence by United States Mail or otherwise, receipt of funds from Plaintiffs, transmission of funds to

2

Plaintiffs, transmission of account statements to Plaintiffs, transmission of annual reports to Plaintiffs, transmission of any other materials to Plaintiffs, or any other contacts with any of the Plaintiffs in person or by any other means including telephonic, mail or electronic contacts.

## ANSWER

Please refer to Interrogatory No. 2 for answer

## INTERROGATORY 4

Identify and describe the nature of the business conducted by Ward Onsa, Denise Onsa, or Ward Onsa & Company including but not limited to contracts, banking or brokerage relationships, financial transactions, licenses or registrations, and tax filings or payments.

## ANSWER

Defendants object to this Interrogatory because it is overbroad and burdensome and not tending to lead to any pertinent information.

## INTERROGATORY 5

Identify and describe all amounts of money received by any of the Defendants from any of the Plaintiffs.

## ANSWER

Amounts received by Ward Onsa & Company from Ronald Henry are $1,300,000.00.

(Document was sent with first set of Interrogatories)

## INTERROGATORY 6

Identify and describe the amounts of money owed by any of the Defendants to any of the Plaintiffs.

3

**ANSWER**

There are no amounts owed to the plaintiffs by any of the Defendants. (See Amended Answer to the Complaint and refer to Memorandum Opinion And Order, filed 6/18/2007 by Henry H. Kennedy, Jr., United States District Judge.)

**INTERROGATORY 7**

Identify and describe any amounts of money paid by any of the Defendants to any of the Plaintiffs.

**ANSWER**

The amount paid to any of the Plaintiffs by any of the Defendants is $1,020,000.00. (Document was sent with the first set of Interrogatories)

**INTERROGATORY 8**

Identify and describe any promise, representation, assertion, commitment, or agreement to repay funds provided by any of the Plaintiffs to any of the Defendants.

**ANSWER**

Please refer to answer for Interrogatory 7 and the Amended Answer to the Complaint.

**INTERROGATORY 9**

Identify and describe any promise, representation, assertion, commitment, or agreement to pay over to any of the plaintiffs any profits, gains, capital value increase, or other amounts resulting from Plaintiffs' investment of funds with any of the Defendants.

4

## ANSWER

Please refer to answer for Interrogatory 8 and the Amended Answer to Complaint

## INTERROGATORY 10

Identify and describe any calculation, memorialization, or representation of the amounts owed by any of the Defendants to any of the Plaintiffs at any point in time.

## ANSWER

Defendants object to this Interrogatory because it is vague and ambiguous. (See original Answer and Amended Answer to Complaint.)

## INTERROGATORY 11

Identify and describe any broker or security dealer licenses, registrations, qualifications or approvals and any other documents referring or relating to the authorization of any of the Defendants to participate in any of the transactions alleged in the Complaint.

## ANSWER

There are no broker or security dealer licenses, registrations, qualifications or approvals and any other documents referring to the authorization of any of the Defendants to participate in any of the transactions alleged in the Complaint. There was merely a letter agreement between the Plaintiffs and the defendants.

## INTERROGATOY 12

Identify and describe any criminal, civil or disciplinary actions instituted by any person or organization against any of the Defendants in connection with the provision of any financial services including, but not limited to transactions of the type described in the Complaint.

### ANSWER

There are no criminal or disciplinary actions instituted by any person or organization against any of the Defendants in connection with the provision of any financial services including, but not limited to, transactions of the type described in the Complaint. There are two civil actions. One was instituted by Bruce Pomper against Ward Onsa and Ward Onsa and Company. The second was instituted by Steve Wahl against Ward Onsa and Ward Onsa and Company.

### INTERROGATORY 13

Identify and describe any litigation between any of the Defendants and any other person or entity including, but not limited to, litigations commenced by Bruce Pomper, Eric Friendlander, Stephen Wahl or any other person or entity.

### ANSWER

Defendants object to this interrogatory because it is not pertinent to any of the issues in this case.

### INTERROGATORY 14

Identify and describe any tax returns, tax assessments, tax-related penalties or other tax obligations of any of the Defendants.

### ANSWER

Defendants object to this interrogatory because it is a broad, sweeping request and over burdensome and not related to any of the issues in this case.

### INTERROGATORY 15

Identify and describe any banking records, stock or securities transactions, deposits or

investments by any of the Defendants since November, 1993 including, but not limited to, transactions outside of the United States. You are reminded that all interrogatories include the request for information in the names of any of the three Defendants or in any other name directly or indirectly used by or controlled by any of the Defendants.

### ANSWER

Defendants object to this interrogatory because it is again a broad, sweeping request that is irrelevant to the issues in this case and places undue burden on defendants.

### INTERROGATORY 16

Identify and describe all facts and documents referring or relating to the truth or untruth of the statement in Defendants' answer that "this court lacks jurisdiction, both over the subject matter and personal jurisdiction over the Defendants."

### ANSWER

Please refer to the original Answer and Amended Answer to Complaint.

### INTERROGATORY 17

Identify and describe all facts and documents referring or relating to the truth or untruth of the statement in Defendants' answer that "$990,000 was returned to Plaintiff at Plaintiffs' request.

### ANSWER

Please refer to the original Answer and Amended Answer to Complaint.

### INTERROGATORY 18

Identify and describe all facts and documents referring or relating to the truth or untruth of the statement in Defendants' answer that "in the aftermath of 9/11, the Plaintiff was notified

7

that he could no longer expect or receive a 25% return and he immediately requested his money back."

### ANSWER

Please refer to the original Answer and Amended Answer to Complaint.

### INTERROGATORY 19

Identify and describe all facts and documents referring or relating to the truth or untruth of the statement in Defendants' answer that "Defendant explained to Plaintiff that he would return his principal $1.3 million but none of the profit if Plaintiff wished to discontinue his investment."

### ANSWER

Please refer to the original Answer and Amended Answer to Complaint.

### INTERROGATORY 20

Identify and describe all facts and documents referring or relating to the truth or untruth of the statement in Defendants' answer that "Plaintiff was so informed and received $990,000.00 of his principal back for two accounts."

### ANSWER

Please refer to the Amended Answer to Complaint.

### INTERROGATORY 21

Identify and describe all facts and documents referring or relating to Refco Account Number F135-48722 or Mann Financial, Inc. Account Number E-264-2640099361.

### ANSWER

Accounts were opened in Ronald Henry's name and as the account holder all documents are in Ronald Henry's possession. Defendants have no documents.

8

## INTERRGAORTY 22

Identify and describe all facts and documents referring or relating to the ownership of or other interest in any asset by any of the Defendants including, but not limited to, securities, financial instruments, tangible or intangible personal property, or real estate including but not limited to 8 Remington Place, Ivyland, Pennsylvania, 18974, and 910 Sycamore Court, Marco Island, Florida, 34145.

### ANSWER

The Defendants possess no assets of significant value.  Please refer to the Amended Answer to Complaint.

## INTERROGATORY 24

Explain and describe all investments or other uses of the funds provided to any of the Defendants by Ronald K. Henry or Constance B. Henry.

### ANSWER

There are none.

## INTERROGATORY 25

Explain and describe all litigations or demands for payment made against any of the Defendants by or on behalf of any person who invested money with or through any of the defendants.

9

## ANSWER

Defendants object to this interrogatory because it is not pertinent to any of the issues of the case.

Dated: _____8 - 6_____, 2007          By: _Ward Onsa_

                                           **Ward Onsa**

Dated: _____8 - 6_____, 2007          By: _Denise Onsa_

                                           **Denise Onsa**

10